UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN IRVING,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 15-01462-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**INTRODUCTION**

Melvin Irving ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB") following an administrative law judge's ("ALJ") decision that Plaintiff had not been under a disability, as defined in the Social Security Act. Administrative Record ("AR") 24-33. For the reasons stated below, the Commissioner's decision is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

///

///

## II.

## PROCEEDINGS BELOW

On April 19, 2011, Plaintiff filed an application for DIB, alleging disability beginning January 1, 2000 (his alleged onset date ("AOD")).[1] AR 112-18. Plaintiff's claim was denied initially on June 29, 2012. *Id*. at 83-86. On October 29, 2011, Plaintiff filed a written request for hearing, which occurred on March 7, 2013. *Id*. at 48, 56, 87. Represented by counsel, Plaintiff appeared and testified, as did an impartial vocational expert ("VE"). *Id*. at 56-76. On April 24, 2013, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act,[2] from the AOD, through the date of the decision. *Id.* at 24-33. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *Id*. at 1-7. Plaintiff filed the instant case on February 27, 2015. Dkt. No. 1.

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled. 20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended AOD. AR 27. At **step two**, the ALJ found that Plaintiff has the following severe impairments: psoriasis, disorders of the back, affective mood disorder, and substance abuse. *Id*. At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 28 (citations omitted). At **step four**, the ALJ found that Plaintiff possessed the

---

[1] At the administrative hearing, Plaintiff's attorney amended the onset date to January 1, 2008. AR 61.

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

residual functional capacity ("RFC") to:

> [P]erform medium work as defined in 20 CFR 404.1567(c), including lifting up to 50 pounds occasionally and 25 pounds frequently, and sitting, standing and/or walking up to 6 hours in an 8-hour workday, with the following additional restrictions; able to perform simple and some complex tasks and relate to others on a superficial work-basis (work better with things than others) and adapt to a work situation.

*Id*. at 28. Based on the foregoing RFC, and after hearing testimony from the VE, the ALJ determined that Plaintiff could not perform his past relevant work. *Id*. at 31. At **step five**, however, the ALJ found that there were "jobs that exist in significant numbers in the national economy that" Plaintiff could perform, and thus determined that Plaintiff was not disabled. *Id.* at 32.

### III.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record

as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.

## DISCUSSION

Plaintiff raises the following claims: (1) whether the ALJ erred at step three; (2) whether the ALJ committed error in failing to acknowledge Plaintiff's VA service-connected disability status; and (3) whether the ALJ's credibility assessment is supported by substantial evidence. Memorandum in Support of Plaintiff's Complaint ("Pl. Memo.") at 3-12, Dkt. No. 20. Plaintiff seeks a remand to correct the ALJ's errors. *Id.* at 12.

A.  **ALJ's Step Three Finding**

Plaintiff contends that the ALJ erred at step three by: (1) not adequately considering the standard for equivalency and calling a medical expert; (2) not considering Plaintiff's physical and mental impairments in combination in determining whether Plaintiff met a listing impairment; and (3) not considering the Listings of Impairments for post-traumatic stress disorder ("PTSD") at § 12.06, 20 C.F.R. Pt. 404, Subpt. P, App. 1. Pl. Memo. at 9. In response, Defendant argues that the ALJ properly considered Plaintiff's psoriasis and found that, while Plaintiff's skin condition was "chronic," it had not persisted for the requisite period

of time despite treatment to meet the listing for skin conditions at § 8.04 or § 8.05. Memorandum in Support of Defendant's Answer ("Def. Memo.") at 6, Dkt. No. 23. Defendant further argues that the ALJ did consider § 12.06 of the listing impairments and thus Plaintiff's contention to the contrary is incorrect. *Id.*

**1. Plaintiff's Administrative Hearing**

At the beginning of Plaintiff's hearing, the ALJ received various exhibits into evidence, and made them part of the record. AR 58. Among those exhibits were Plaintiff's medical records from the Department of Veteran Affairs ("VA"). AR 339-730 (Exs. 11F-14F.) Those records contain, *inter alia*, extensive documentation of Plaintiff's skin condition, described alternatively as "dermatitis," "atopic dermatitis," and "psoriasis." *See, e.g.,* AR 506-07, 509, 528, 585, 597, 609, 687, 761. Plaintiff's VA medical records show that he was treated for his skin condition from as early as April 2011 (AR 687-88) through July 2012 (AR 442). *See also*, *e.g.*, *id.* at 447, 472-73, 497-99, 506-07, 526, 528, 585.

Plaintiff also testified about his skin condition:

> Q  Is this skin condition part of your service-connected disability?
> A  Yes, ma'am. Yes ma'am.
> Q  What is it called?
> A  It's called some crazy form of eczema that's very aggravating.
> Q  Part of your service connection says that it's dermatophytosis, is that the correct - -
> A  Yeah, I think that's how you pronounce it.
> Q  Are you on medication for it?
> A  Yes, ma'am.
> Q  What medication are you on?
> A  Well, I'm on about, I'm on two different topical steroid creams. And then I'm on, I'm on one that they treat me orally called Cyclosporine. And it kind of brings down your whole body, but it does relieve the itching, the itching.
> Q  And then within Exhibit 12F, the VA records, it looks like you had also had some light-box treatment for your skin?
> A  Yes, ma'am. It was before the Cyclosporine. They were trying to treat me with some new hypo – some kind of light treatment.

| | | |
|---|---|---|
| | | It was supposed to, it was supposed to do some kind of treatment without aggravating it. I did that for over a year and it still got worse. They hadn't seen anything like it, so they had to start treating me with injections. |
| | Q | How long have you had the injections? |
| | A | I did injections for about – well, they did injections over the course of a year. I had about maybe, I think about four different injection sessions where you may be injected about maybe 15 to 25 times. They hit it directly in alba, the little puss areas, the infected areas. |
| | Q | Do you always have infected areas on your body? |
| | A | I do not always. I always have something infecting, yes, but it's not always where they all flame up at once, like in some of the pictures where my entire body would be infected at once. And I don't know why that happens, but that happens about twice a year. But say like I've got the big cyst or whatever, there will be two or three of them on my body at every time. But it's really when it's all aggravated at the same time, it's when I really, when I really go through – |
| | Q | How long have you had the condition? |
| | A | Oh, wow. I've had it, I've had it since about, I believe 2001 or 2002. 2002 I believe I first developed it in the first, in the Gulf War. |
| | Q | Has it gotten worse over time? |
| | A | Oh, absolutely. Yes, it's like my whole body is consumed now. |
| | | . . . |
| | Q | Okay. Now, you indicated that you did the light-box [treatment] for one year, you did the injections for one year. How long have you done the Cyclosporine? |
| | A | It's been at least, oh wow, I'm assuming about a year maybe. |
| | Q | Okay, |
| | A | About a year. Yeah, because that's when it got, when they had to start aggressively treating it. I guess it had gotten out of dermatology's hand. They couldn't, they started calling specialists in for me. |

*Id.* at 62-64.

Plaintiff was then asked a series of questions about his PTSD, as well as his back injury. At the conclusion of the hearing, Plaintiff's attorney argued that the case fell within a medical listing, specifically listing §§ 8.04 and 8.06. *Id.* at 75-76.

6

...

### 2. The ALJ's Decision

The ALJ found that Plaintiff's impairments, including Plaintiff's skin condition, neither met nor equaled the severity of any of the Listings. With respect to Plaintiff's skin condition, the ALJ explained that finding as follows:

> [T]he claimant's psoriasis does not satisfy the criteria in sections 8.04 and 8.05 of the Listings of Impairments, which consider, respectively, chronic infections of the skin or mucous membranes, and dermatitis. While the claimant's skin condition appears to be chronic, there is no evidence that it has persisted for at least three months despite continuing treatment as prescribed.

*Id.* at 26. Later in the ALJ's decision, Plaintiff's medical records relating to his skin condition were discussed:

> [T]he medical records show the claimant has a history of psoriasis, with generalized areas of skin colored to hyperpigmented popular rash on the face, scalp, trunk, and lower extremities. He had multiple nodules on the forearms, most oozing with clear exudate. []. He underwent phototherapy treatment, but continued to have flare ups.

*Id.* at 30.

The ALJ also assessed the severity of Plaintiff's mental impairments, including applying the four broad functional areas technique used in evaluating mental impairments. *Id.* at 26, 28. The ALJ found that Plaintiff's mental impairment did not meet or medically equal the criteria of listings for "Affective Disorders," §§ 12.04, 12.06, or 12.09. AR 26. There is no discussion in the ALJ's decision of the combined effect of Plaintiff's physical and mental impairments in determining whether his condition equals a listing for Affective Disorders.[3]

---

[3] The decision states "The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.09," but there is no discussion about the combined effect of

7

### 3. Pertinent Law

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity[.]" *Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in original). If a claimant's impairment (or combination of impairments) meets or equals a "listed impairment[], the claimant is conclusively presumed to be disabled. If [it] is not one … conclusively presumed to be disabling, the evaluation proceeds to" step four. *Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); *see also Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999).

"Conditions contained in the 'Listing of Impairments' are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester*, 81 F.3d at 828 (citing 20 C.F.R. § 404.1520(d)). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citation omitted).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Id.* (emphasis in original) (citing 20 C.F.R. § 404.1526).

The ALJ must evaluate the relevant evidence before finding that a claimant's impairments do not meet or equal a Listing; boilerplate findings are "insufficient to

---

Plaintiff's mental and physical (skin condition and back disorders) impairments. AR 26.

8

support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). Further, the ALJ "is required to take into account the combined effect of a claimant's physical and mental impairments in determining whether his condition equals a listing for Affective Disorders. *Lester*, 81 F.3d at 828.

### 4. Analysis

In a summary fashion, the ALJ found that Plaintiff's skin condition had not persisted beyond three months despite treatment. The ALJ's finding on this point is contradicted by Plaintiff's testimony describing his skin condition and the treatment he has received for that condition, which has spanned a period of several years, *and* the medical records presented to the ALJ, which appear to corroborate Plaintiff's testimony as to both the fact of the skin condition and the length of treatment. The ALJ's findings are silent as to how the ALJ arrived at a conclusion with respect to the persistence of Plaintiff's skin condition that is contradicted by the objective medical record.[4] The Court finds this to be reversible error. The ALJ's cursory analysis constitutes the type of boilerplate proscribed in *Lewis*.[5] Accordingly, the Court finds that the ALJ's evaluation of the evidence was insufficient to support her

///

---

[4] The ALJ found Plaintiff's statements "concerning the intensity, persistence and limiting effects of functional and capacity assessment are not credible to the extent they are inconsistent with the [RFC]." AR 31. However, the ALJ's discussion of Plaintiff's credibility does not address the seemingly contradictory medical records regarding the length of treatment Plaintiff has received for his skin condition, which as noted above, appear to corroborate Plaintiff's testimony as to persistence.

[5] In *Lewis*, the court further noted that "*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" *Lewis*, 236 F.3d at 513. In other words, a cursory step three analysis may be cured by proper discussion and evaluation of the evidence elsewhere in the decision. No such proper discussion and evaluation, however, is present in the ALJ's decision to cure the cursory step-three analysis.

conclusion at step three with respect to whether Plaintiff's skin condition met or equaled a listing.

### B. Remand Is Warranted

It is within the Court's discretion to determine whether to remand for further proceedings or order an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). "A remand for an immediate award of benefits is appropriate, however, only in 'rare circumstances.'" *Brown-Hunter v. Colvin*, -- F.3d --, 2015 WL 6684997, at *7 (9th Cir. Nov. 3, 2015) (citation omitted). Before ordering a remand for an immediate award of benefits, the Court must find that "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Here, the Court finds that further proceedings would be useful to determine the severity of Plaintiff's skin condition. Further proceedings would also be useful to allow for a fuller development of the record regarding whether the combined effect of Plaintiff's physical and mental impairments equals a listing for Affective Disorders. *See Lester*, 81 F.3d at 828.

If, on remand, the ALJ determines that the same result is warranted, further proceedings would allow for more thorough equivalency analysis, and allow the ALJ to consider other factors impacting Plaintiff's entitlement to benefits not presently addressed in her decision.

### C. Plaintiff's Other Claims

Because "the listings … operate as a presumption of disability that makes further inquiry unnecessary[,]" the Court declines to consider the other issues raised herein until it has been conclusively decided whether Plaintiff's impairments meet or equal one of the Listings. *Sullivan*, 492 U.S. at 532.

///

///

///

10

# V.
# CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 25, 2015

*/s/ Rozella A. Oliver*
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

# NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**